## IN THE MATTER OF RIGHT OF THE SOVEREIGN TO APPOINT A NEW CABINET, ON TAKING THE THRONE.

OPINION OF THE JUSTICES OF THE SUPREME COURT TO THE CABINET.

The Constitution is silent as to the status of the Cabinet on the death of the Sovereign who appointed them.

Held, that the successor to the throne has the power to call for their resignations.

DEPARTMENT OF THE JUDICIARY,

HONOLULU, February 25, 1891.

*To Their Excellencies Godfrey Brown, Charles N. Spencer and Arthur P. Peterson, Members of His late Majesty's Cabinet:*

GENTLEMEN: The Justices of the Supreme Court have had the honor to receive your communication of the 16th inst., in which you say that "in accordance with the provisions of Article 70 of the Constitution, we, His late Majesty's Cabinet, having been requested to resign by Her Majesty the Queen, beg to request the opinion of Your Honorable Court as to whether the commissions held by us from His late Majesty Kalakaua are

valid and legal, and whether under Article 41 of the Constitution there is any power existing than that mentioned in said Article, to wit, the Legislature, which can recall said commissions or render them inoperative."

Having delayed replying to this communication at your request until to-day, we now reply as follows, fully impressed with the importance and difficulty of the matter submitted.

The question of the effect of the death of the Sovereign upon the status of the Ministry, receives little light from the Constitution and the laws.

The tenure of office of a Hawaiian Ministry closely follows the English rule, in that it may be terminated by the Legislature. Here, as in England, the Sovereign appoints the Cabinet, though in that country the royal prerogative is satisfied with the formal appointment of the leader of the party in power as Premier, and the ultimate approval of his nomination of the other members of the Cabinet.

The British Ministry is sometimes described as a standing committee of Parliament, because they are selected from the Peers and the elected members of the House of Commons, and are responsible to Parliament and may be dismissed by its vote. Yet in England the Ministry hold such relations with the Crown, as its appointees and responsible representatives in the administration of executive business, that they are dissolved by the death of the Sovereign, leaving the new incumbent free to create a new Cabinet or to reinstate the old one. We know of no exception to this rule ; the holding over of the Lord Melbourne Ministry of William IV., upon his death and the accession of Queen Victoria, is sometimes cited as an exception, but as a matter of fact they surrendered to her the seals of their respective offices, and received them again at her hands (4 Martineau's History of England, 83, 89.) It may be added that although precedent obliges the Ministry to resign at the death of the Sovereign in England, the unwritten law requires the new ruler to select the leader of the prevailing party as Premier, which means that he is expected to reinstate the old Ministry or, at least, its head. This practice is in accordance with our

own political system and will in time doubtless be regarded as essential.

Here the Ministry are not members of the Legislature except by virtue of their positions in the Cabinet, and are not necessarily selected from the Legislature, and they hold about the same relations to the Crown as is the case with the British Cabinet, so that although they might perhaps with some show of reason be termed a standing committee of the Legislature, such a view is less obvious than is the case in England. Strictly speaking, however, the Cabinet is not a standing committee of the law-making body in either country.

Under this similarity of circumstances, the practice in England upon the occasion of the death of a Sovereign must have great weight with us in a like emergency, with our want of constitutional provision therefor. The precedents of other, perhaps all other, monarchical countries emphasize the force of this rule.

There is no question, and there can be none, that when once a Hawaiian Sovereign has appointed and commissioned the Ministry, neither such Ministry nor its individual members can be dismissed by him without a vote of want of confidence in the Legislature or a conviction of felony. The judgment of a successful impeachment would be deprivation of office.

The Constitution has definitely diminished the former powers of the Crown, but we do not find in it any words taking away the admitted previous right of a Sovereign to begin a new reign with the selection of a Ministry. We are bound to seek for the meaning of the instrument in its words, and may not add to it a meaning or an intent not supported by its language. Nor are we, in interpreting the Constitution, justified in reaching conclusions solely through technical reasoning or remote implications; such methods would seem to be not only dangerous, but unsuitable to the construction of instruments of the plain and simple nature which is characteristic of national constitutions.

Article 41 provides that the Ministers shall be removed by the Sovereign only upon a Legislative vote of want of confidence or

upon conviction of felony, and also that they shall be subject to impeachment. As to the effect of the death of a Sovereign upon the status of the Cabinet, this Article is silent, and we find nothing in the rest of the Constitution bearing on this question, except in the case of the death of the Sovereign, leaving no heir to the Throne (Art. 22), or leaving a minor heir without having provided for a regency by Will (Art. 33). In the first of these contingencies, the Cabinet are continued in office for the sole purpose of administering the government during the interregnum and of calling the Legislature together to elect a successor to the Throne, if we may judge from the practice under the similar provision of the Constitution of 1864. In the second contingency the Cabinet are created a provisional council of regency to conduct the government until a regular regent or council of regency shall be elected by the Legislature called together for that purpose. This corresponds exactly with the requirements of Article 33 of the Constitution of 1864.

If these two provisions, in case of the contingencies named, have any bearing upon the question before us, they rather militate against than favor the proposition that under all circumstances the status of the Cabinet is unaffected by the death of the Sovereign, especially if we consider the practice under the first, and the necessary interpretation of the second, during the period of the last Constitution.

The words referred to in Article 41 are as follows: "They (the Cabinet) shall be appointed and commissioned by the King and shall be removed by him, only upon a vote of want of confidence passed by a majority of all the elective members of the Legislature, or upon conviction of felony, and shall be subject to impeachment." Apparently the sole objects of these words were to deprive the Sovereign of his former power of dismissing his Ministers at will, and to define the conditions under which the Ministers shall be dismissed for cause. How, then, shall we extract from them the further meaning that they state the tenure of office of the Ministers, excluding the emergency of the death of a Sovereign, which, as was well known under the previous Constitution, vacated their commissions except as they

held over provisionally until the appointment of their successors ?

It may be argued that the Constitution is a great advance upon the former system of government, and when examined as a whole shows such a consistent intent to establish government by a Cabinet responsible solely to the Legislature, that the repeal of the old rule as to the effect of the death of the Sovereign may be taken for granted. But how shall those whose duty it is to interpret the Constitution be advised of the extent of the intended reform, if there are no words to guide them? So far as the language goes, it may have been the intent of the framers to leave the old rule in force in correspondence with the practice in England, or amid the pressure of other and perhaps more important questions this point may have been overlooked altogether. What may have been the intent upon this subject, or whether it was thought of, cannot be gathered from the language used, and we may not arrive at an opinion by guesswork.

As we do not find that the old rule has been changed or repealed by the Constitution, or that the Sovereign has been by it deprived of the right of selecting a Cabinet at his accession, we are of the opinion that the death of His late Majesty obliges you to tender your resignations to Her Majesty the Queen.

One of the Justices dissents from the foregoing opinion.

We have the honor to be,

Your obedient servants,

A. F. JUDD,
R. F. BICKERTON,
S. B. DOLE.

---

### DISSENTING OPINION.

The Constitution of 1865 provided in Article 42 that the members of the Cabinet shall be appointed and commissioned by the King and hold office during His Majesty's pleasure, subject to impeachment.

It is not to be doubted that upon the death of a Sovereign under that constitution, the Ministers who had held office during the King's pleasure should properly tender the new Sovereign their portfolios. Their commissions would not become vacant by the death of the King appointing them, as is evident by the fact that Ministers have in this country many times continued in office temporarily at the request of the new Sovereign without new commissions or gazetting of appointment. It has been a tender only of resignation, and a pending holding of office, not a vacation of the commissions by the act of the King's death. Article 33 of the Constitutions, both of 1865 and of 1887, support this view by assigning the office of regency to the Cabinet in case of the Throne demising to a minor heir, and of calling the Legislative Assembly together. So in the case of a vacancy of the Throne. The Ministers of King Lunalilo exercised their functions in the interregnum following his death and sat and voted in the Legislature at the election of His late Majesty Kalakaua, as they had previously sat and voted in the interregnum between the death of Kamehameha V. and the election to the throne of Lunalilo.

But the existing Constitution has provided that the Ministers of the King, having been appointed by him, shall hold office, not as before, during His Majesty's pleasure. They can be removed by him only upon a vote of want of confidence passed by a majority of all the elective members of the Legislature or upon conviction of felony.

No difference between the present and the preceding Constitution is more important than this. It provides for and secures a Government by responsible executive heads of departments. It provides that they shall hold office practically from one Legislative session to the next. Practically the appointments made by the Sovereign are confirmed by the Legislature. It is parliamentary government.

The case of a Sovereign coming to the Throne in the interval of Legislative sessions is not provided for. It may be said that the omission leaves it open to the Sovereign to require the resignation or to declare vacant the commissions of the existing

Cabinet and to appoint and commission a Cabinet of his own selection ; or, on the other hand, it may be said that the failure to provide for this case requires it to be considered that it does not form an exception to the rule that a Cabinet once appointed holds office till the action of the Legislature may terminate its holding.

The determination between these alternatives is not easy. We can derive no absolute rule applicable here from the precedents of England, of the United States or other countries, for the clause in our Constitution is unlike any other provision known to us.   Perhaps either position is tenable, but I prefer that which holds that the existing Cabinet remains in office ; chiefly for the reason that it saves the principle for which this new Constitutional clause was introduced, namely, that the Government is vested in a Cabinet approved by the people through the elected Nobles and Representatives.    The King never dies.    The new Sovereign under this Constitution comes to the Throne and to the Government of the deceased tenant of the Throne.

It may be said that this view deprives the new Sovereign of every opportunity of free appointment of a Cabinet, because the Cabinet in existence at his accession may be continued by Legislatures by refusing to vote a want of' confidence through all his reign ; but this is no more than may be said after the first appointment, that the Sovereign has no second opportunity of appointment, and must continue with a Cabinet which is unacceptable to him.    The one is really no greater restriction than the other.    The objection is a theoretical one, for practically the Sovereign will have opportunity from time to time to select and commission Ministers.    Death, resignation and the high probability that a Cabinet will in no great length of time incur Legislative censure, forbid the supposition that the Sovereign will not, quite often enough, be called to the grave duty of replenishing the Cabinet offices.

LAWRENCE McCULLY.